## (November 22, 1960)

■ In the Matter of ALDA L. SUTTON, Formerly Known as ALDA L. THOMAS, Petitioner, v. HERMAN E. HILLEBOE, as Commissioner of Health of the State of New York, Respondent.— Determination of the Commissioner of Health annulled on the law, on the facts and in the exercise of discretion, without costs. It does appear that there were irregularities in the conduct of the petitioner in connection with her duties as a licensed practical nurse, but there is no support for the determination by the Commissioner of Health that she violated the provisions of section 3351 (subd. 1, par. [b]; subd. 1, par. [a], cl. [1]) of the Public Health Law. Such determination of the Commissioner is

stated to be made "after due consideration and deliberation upon the findings, conclusions and recommendations of the Hearing Officer", but the findings of fact and conclusions of the hearing officer do not show violations by petitioner of the particular subdivisions. Furthermore, the determination by the Commissioner of violations by the petitioner of the particular subdivisions of section 3351 of the Public Health Law does not appear to be supported by substantial evidence. It appears that the entries made and signed by the petitioner in the narcotic record book of the Caledonian Hospital for demerol for patients Greenspan and McGowan, were made some time before the administering of demerol to those patients. Thus, the entries were not in fact statements of the quantity of drug administered. They were in fact entries for demerol taken by petitioner from the hospital's supply before the administering of the same and, as of the time made, were correct in that she did actually thereupon receive 100 milligrams of demerol for the account of each of said patients. Further, she states that, following her receipt of the 100 milligrams of demerol for each of said patients and on administering only 75 milligrams of demerol to each of said patients, she did correctly enter in the bed chart of each patient the amount of demerol actually administered; and her statement in this connection is not controverted. Under these circumstances, the determination of the Commissioner that she did "wilfully make false statements" in the narcotic record book in violation of said section 3351 (subd. 1, par. [b]) of the Public Health Law is not sustainable. Further, the determination of alleged violations by petitioner of said section 3351 (subd. 1, par. [a], cl. [1]) of the Public Health Law is not supportable in that such determination is also based upon the premise that she did falsely state in the hospital records that she had administered 100 milligrams of demerol to her patients Greenspan and McGowan. The determination of this court is without prejudice to such other or further proceedings as may be pending or may be taken in connection with any alleged misconduct of the petitioner other than specifically based upon alleged violations of said section 3351 (subd. 1, par. [b]; subd. 1, par. [a], cl. [1]) of the Public Health Law for the alleged withdrawal and the administering of demerol to the patients Greenspan and McGowan. Concur — Botein, P. J., Stevens, Eager and Bastow, JJ.; McNally, J., dissents and votes to confirm in the following memorandum: I dissent and vote to confirm the determination. Although imprecise, the findings made in the light of the admissions of petitioner sustain the charges. On April 28, 1957, the petitioner, a licensed practical nurse employed by Caledonian Hospital, recorded in its narcotic record book, at 4:00 P.M., the withdrawal of 100 milligrams of demerol for administration to a patient named Greenspan; at 6:30 P.M., on the same day petitioner also recorded the withdrawal of 100 milligrams of demerol for administration to a patient named McGowan. Instead of administering the specified quantities of the drugs to said patients, the petitioner in each case administered 75 milligrams to the patient and 25 milligrams to herself by injection. The narcotic record book of Caledonian Hospital under the legend "Record of Narcotics Administered" shows the following:

| Date | Time | Name of Patient | Drug | Dose |
|---|---|---|---|---|
| 4/28/57 | 4:00 | Greenspan | Demerol | 100 mg |
| 4/28/57 | 6:30 | McGowan | Demerol | 100 mg |

In petitioner's own statement marked in evidence the following appears:

"On April 28, 1957 at about 4:30 P.M. while employed as a nurse at Caledonia Hospital, I made an entry in the narcotic record book, charging patient Greenspan, second floor, with having received 100 mg. Demerol. I gave the patient

Greenspan 75 mg. of Demerol and used the balance for myself due to pain in the gall bladder region.

" On the same date, April 28, 1957, at about 6:30 P.M. I made an entry in the narcotic record book, charging patient McGowan of the second floor, with 100 mg. Demerol. I gave patient McGowan 75 mg. and used the balance for myself. On both of these occasions I charted the patients as having received 75 mg."

The first charge is that petitioner willfully made false statements in the narcotic records required to be kept at the Caledonian Hospital; the second charge is that petitioner obtained narcotic drugs by fraud, deceit, misrepresentation and/or subterfuge. The third and fourth charges have been dismissed. The hearing officer before whom the charges were heard found: " Respondent, by her own admission, has violated her position of trust as a Licensed Practical Nurse. * * * her self-administration of narcotic drugs from the hospital supply was inexcusable." It is implicit in the findings made that at the time of the making of the entries the petitioner did not intend to administer dosages of 100 milligrams and instead intended to administer dosages of 75 milligrams to the patients and to appropriate and administer to herself the remainder. These facts sustain the charges of violation of section 3351 (subd. 1, par. [a], cl. [1]; subd. 1, par. [b]) of the Public Health Law.